This case deals with two big issues. One is the patents for which the jury was hung on the issue of infringement, and the second is the issue with respect to the patents where the jury found non-infringement. For the patents for which the jury was hung, District Court's JMO was erroneous because it had three times said there was sufficient evidence for the on a claim construction that are reversed from its prior claim constructions that's contrary to the plain language of the claim, that excludes preferred embodiments, that reads limitations into the claim that are found nowhere in the patent. It also rejects an express definition by the patentee. Under this court's claim construction principles, the court's JMO ruling was improper. How was the court wrong on the proposition of collecting required by the claims? So the term collect, Your Honor, pre-trial and at trial, the more committed in a trial, the jury instruction. Collecting traffic speed data. Correct. The court ordered collect traffic data, speed data, had its plain meaning. In its JMO, it said collect traffic speed data was limited to collecting a particular type of data, raw traffic data. Now, raw traffic data is a particular type of data. The claim itself is generic. It just says data. It doesn't require it to be in a particular format. So the construction that the court adopted post-trial is contrary to the plain language of the claim. Now, if you look at the patent specification for guidance, we see that the traveler data processor, which is the element we're talking about here that collects traffic data. All the Garmin device is doing is receiving a single input signal from this Navtech source. Isn't it Navtech that's doing the collection, that's figuring in traffic speeds and accident rates and alternative routes? It's the one collecting the data, right? Well, Your Honor, Navtech may collect data, but it doesn't mean the Garmin device doesn't also collect data. How does it collect data? The Garmin device receives the RDS TMC broadcast. The data comes into the device. And so if I'm operating a device here in Washington, D.C., I'm going to have a different collection of data in my device than if I'm operating it in New York or in Philadelphia. And so each device has a different collection of data, a subset of data. Both devices has just received a single, it's received, it hasn't collected anything, has it? Well, it certainly has collected the data. Collecting suggests that you acquire data from various sources and collect them into a single point. This is receiving one item of data from an outside source. Am I misconstruing that? I think you are, Your Honor. The actual patent specification describes the Traveler Data Processor, which is the element we're talking about, as collecting traffic data and receiving traffic data. You use those words phenomenously. If you look at column 252, 463, it talks about the Traveler Data Processor collecting traffic data. If you look at column 847, 1031, it talks about the Traveler Data Processor receiving traffic data. Excuse me, you go ahead. No, I'm just going to go to the specification and point out that it seems to talk about collection the same way I do. It says the feeding programs 114 collect the data in various forms from a variety of data sources. And I could go on and read. And that's exactly right, Your Honor. The feeding program collects the traffic data in various forms. The feeding program does not claim. That's what Navtech is doing. That may be what Navtech is doing. How does Garmin do that? The feeding program, Your Honor, is an element that's not claimed. It's something in the patent that's not claimed. The Traveler Data Processor is what's claimed. The Traveler Data Processor, if you look in Figure 1, receives the standardized data from the feeding program. So it's receiving standardized data from the feeding program in the exact same way that a Garmin device receives standardized data from, say, Navtech in a feeding program from the RDS TMC broadcast. It's the exact same thing. The feeding program to a processor. The processor is collecting the data from the feeding program. It's exactly what's happening with Garmin and Navtech. Navtech is the feeding program. It's sending the data being collected by the processor. And the processor has to collect the data and save the data in order to route the user. The whole idea here is to route, if I want to go from here to Baltimore, and I want to figure out, should I go south on 395 and come up 495? Should I go up New York Avenue? Should I go up the parkway? The whole idea is to collect this data so I can figure out which is the best way to go. Let me just ask this in terms of kind of a humble example. I'm driving on the Beltway, and I'm curious about what traffic conditions are in various areas. So I turn on my radio, and I turn on to one of the news channels that every eight minutes or something has information about traffic situations. And they have helicopters, and they've got sensors and so forth. And they say Route 126 is clogged, but I-95 is clear. They're collecting data. Everybody agrees with that. Am I collecting data when I turn my radio on? Are you personally, or are you radio? What's the question? Is my radio and me working together? Are we collecting data, or are we simply receiving data that has been collected? Let's talk about the radio and talk about you. The radio is just streaming the data, which is not what a Garmin device does. It is not what a Garmin device does. A Garmin device saves the data in the Garmin cache. It's right in the source code. I'd really like you to start with my example rather than moving quickly. So the radio is just streaming the data. It's not saving it. Am I collecting the data? For you personally, if you were putting that in your head, then you may be collecting data. You're collecting data. You're saying, okay, I've now collected data from the roads. I can see I'm collecting data from the radio broadcast. And if somebody in the backseat didn't hear the radio broadcast, and I say I-95 is clear, are they collecting data? If they didn't hear the broadcast? They didn't hear the broadcast, but I'm passing it on to them. And you tell them? The information. I simply tell them I-95 is clear. Are they collecting data? They have a collection of data personally that they've just received a collection of data. But the claim here is for a processor to collect data. Okay. Now, I understand. I'm just trying to get at your use of the term collect. Right. It seems to me that that's a very broad, certainly not idiomatic use of the term collect. Well, let's give an example. You're a coin collector. I might be a coin collector. You're a coin collector. The other judges are coin collectors. We might each have a different coin collection. We might go to a coin store, and the coin store has got a different coin collection, and buy a coin. The Garmin devices are very similar. They collect data. If I'm driving in D.C. and I have my device on, I'm going to collect data reflecting the current conditions around D.C. right now. If I have my device on and I'm in Baltimore, I'm going to get a different broadcast, and I'm going to have a different collection of data within the device. The word collect is just a plain English language word, collect. There's nothing special about the word. And the construction the court had put into it was to put the word raw into it. And the patent specification shows that it says standardized data from a feeding program. That's what we're talking about. And this is exactly what happens in this case. The Garmin device receives a standardized set of data. It's no different than exactly what's happening in the patent. I'd like to also talk about the term real-time. The term real-time, the court said plain meaning before trial and ordered plain meaning at trial, and just like it did with collect. And then post-trial, it engrafted a further limitation onto it and said it has to be right now, not past, not present. If it's going to engraft a further limitation onto the claim post-trial, it must follow the court's claim construction principles. And the patentee has an express definition here that says as used herein, the term real-time data means data that is available as soon as practicable. Couldn't be clearer on this point, column 6, 19 through 21, because he knows that there's some data latency, some delay in getting the data from, say, a road sensor through processing equipment to the ultimate user to be used for routing, which is the whole purpose here. So the court's definition was expressly rejected, the express definition in the patent post-trial, and that was there. What does Garmin have to say about that? They don't really have an argument substantively in response to that as to why that should have been rejected. The argument in response is really a procedural argument that we somehow agreed to that previously, which we didn't because the district court ordered plain meaning. It didn't engraft this right now limitation with no data latency, which makes no sense given the technology. There's also, with the hung jury patents, there's a third claim term, the claim term server. In the claim term server, the court, again, improperly put a new limitation into the claim post-trial. Pre-trial, at trial, in the Markman and the jury instructions, it ordered that the server would take its plain meaning. Post-trial, it says server means a collection of raw data. Again, inserting the word raw. Just like the word collect in the 649 patent and the word raw in the 452, the word raw never appears in either patent, ever. He put a limitation in the 649 collect and the 452 server with a word that doesn't appear in either patent. If you look at the dependent claims in the 452 patent, it allows for the data set to be historical data, which is not raw data. It's been processed over time to say at 7 a.m. on, say, 495 over by Silver Spring, that stretch of road is 25 miles per hour. But at 3 p.m., maybe it's 75 miles per hour. That's not raw data. That's historical data. So the judge's construction post-trial in the 452 patent made the independent claim impermissibly narrower than the dependent claim. That just can't be. And in column 9. What is the other source of data that the server aggregated other than from Navtech? Were there other sources that Garmin aggregated? What is the other source of data that the server aggregated? Garmin server? You're asking about the infringement evidence. Besides Navtech, yes. Besides the Garmin. The Garmin server primarily gets its sources from Navtech, and I believe it gets sources from itself. So there's at least two sources of data where it aggregates that and sends it to its users. So the Garmin server aggregates data. But the important point here, Your Honor, is the claim does not require that it be from one source, two sources, three sources. If you look at the claim language, it's generic. It just says a data aggravation server that manages a plurality of data sets. The data sets are not limited to coming from various sources. And the past justification gives examples. It said it could be historical traffic data. It could be different types of data. And it's not limited to coming from various sources. And the court read that limitation in post-trial, which was different from its claim construction at trial and at Markman, where it said plain meaning, which Garmin agreed to during the claim construction plain meaning. Because different sources came up in the JMAL order for the first time. I think I missed something during your explanation of the term. What is your reading of the term plurality in that limitation? A plurality of data sets? Yes. Right. So that actually wasn't litigated below. But plurality of data sets. That's part of this whole data aggregation server configured to manage a plurality of data sets. Yes. So what is it your take on the term plurality in that context? That means you have more than one data set. So you could have various sets of historical data. You have various sets of delayed batch traffic data. You have delayed batch traffic historical data. You have various sets of data that you're using. And you're going to use that to determine this prediction of average speed. And the whole idea is to use that data to predict what the average speed is on the road. And I'd like to talk about, just get back to collect for instance. But there's no record evidence that it aggravates data from anything other than from one source, right? No record evidence that the Garmin server... It aggregates data from anything other than one source. The Garmin server aggregates data from... It only gets it from Navtech. It gets it directly from Navtech. I think it has its own data. And then Navtech gets it indirectly. So it's getting it indirectly from other sources through Navtech. Now, it's getting a priority of data sets on its server. It has multiple data sets on it. By the way, where's that in the record? The which? That Navtech's getting it from a variety of other sources. And therefore that you somehow are indirectly aggregating what you get from one source. I think that's all over the record, Your Honor. In fact, Garmin's whole presentation was about Navtech collecting from these various sources. I don't even think that's even in dispute. I think they get it from road sensors. They get it from helicopters, other input information. So I don't even think that's actually in dispute, that they get it from sensors and web services and things like that all over the country. I actually don't think that's disputed. But the term collect, if you look at the patent specification, it uses the words receive and collect synonymously with a travel data processor, which is exactly the claim term we're talking about. And that's in column 8, line 47. Of which patent? Of the 649 patents, which is the term collect. I'm sorry, what column and what? So it uses the word collect, travel data processor, collect data in the abstract. Column 2, line 52. Column 4, line 63. It says the travel data processor collects traffic data. Line 8, column 8, line 47. It says it receives traffic data. If you look at column 10, line 31, it talks about the traveler incident processor, which is part of the travel data processor, received traffic data. It uses the words synonymously. If there's no further questions, I'll save my time for rebuttal. Well, rebuttal time disappeared. We'll restore two minutes to you for rebuttal and give Mr. Broombridge an extra two if he needs to use them. Thank you, Your Honor. I'd like to maybe just start off, Chief Judge, with your question about the data aggregation server and whether it aggregates anything from anywhere other than Navtech. The position that the plaintiff took at trial was the exact contrary of what was just stated here, namely that the data comes exclusively from Navtech. And that's in the record at 13243, where discussing this issue of collection, counsel for Triangle specifically says Navtech aggregates the data. And that was their position consistently. On these collection issues and aggregation issues, the argument was made simply receiving these radio broadcasts, these messages, one after another amounts to collecting. And that was what the dispute boiled down to in the court below. That was the dispute that the court resolved. And that leads me to the question, the fundamental argument that's made in this appeal is that the district court somehow changed its mind or changed its claim construction after the trial, which is simply not correct. The district court consistently maintained the same views about what these terms meant, real-time and collect, from the Markman hearing through the entire proceeding until post-trial motions. Every time the issue came up, the district court said the same thing. And so the assertion... You've got a little trouble with the real-time, don't you, Mr. Groombridge? That's got a pretty specific definition in the specification that the district court seems to ignore or at least not apply. I'm not sure, Chief Judge, whether I would agree that what the district court did ignored that. But let me first of all talk about the history here. As we went into the Markman hearing, Triangle argued the same argument that it now makes, namely that express definition controls. The district court said, I'm going to apply plain meaning and the plain meaning is right now. It said that expressly. That's 4898 in the appendix. But there has... Everybody recognizes, the specification recognizes there's going to be a lag time. It's a brief lag time. I think the inventor testified it was around five minutes or so. Well, I think what the specification is talking about is the time in that... The language that immediately follows that so-called express definition, which is as soon as practicable, we read as being... as referring to the amount of time it takes between when an event happens and when the information becomes available to the aggregator. And if you follow the principles of Phillips and you read this as a patent on a data aggregation system that pulls from a variety of sources, such as toll information and road sensors... The specification goes on to recognize that this real-time data is going to be available in anywhere from a few seconds to a few minutes, but quickly. But the question there is available to who? And, Your Honor, the way we would read that is to say that means available to the aggregator. And what the specification is talking about here is saying real-time means something that the aggregator gets just as quickly as the aggregator can. And so, in most instances, for example, if you look... when it refers to real-time data, it consistently refers to things that are available essentially instantaneously. For example, column 33, line 20, say real-time data such as sensors. But don't you have a little trouble in that the judge at one point does say, okay, there can be some lag time, and later says, nope, no lag time. I don't believe so, Your Honor. I think what the judge says, and I think the critical exchange here that causes a problem for the appellant, is at the Markman hearing, the judge says, I think the plain meaning is right now. And the appellant then abandons the argument that it is attempting to make to this and says, there is an express definition, but we'll leave that behind, and we're fine with going with your plain meaning, Your Honor, right now. And they elected, presumably for tactical reasons, to do that. They went through the entire trial with that understanding. Every time the issue came up, the trial court made it perfectly clear that he considered the plain meaning to be right now. There was never an objection, in fact, when this came up at the summary judgment. We moved for summary judgment saying, we don't collect the information right now. And counsel for the appellant said, acknowledged that the court had construed it to be right now and said, that's fine, that's right, no problem. Was that language the right now language? The language that was actually used? I thought the court simply said, we'll just go with the ordinary understanding of the term without further elaboration. Correct me if I'm wrong. Well, Your Honor, this is an exchange at the summary judgment hearing. What was the jury told? The jury was told that it was plain meaning. And they weren't given right now? They were not given right now. They were never given right now. So, at the summary judgment hearing, where the defendant, Garmon, has moved for summary judgment on the basis that he doesn't collect data right now, doesn't receive data right now, counsel for the patent owner says, well, Your Honor, I've construed real time to have the plain meaning right. The court, I did, that's right now. What we're doing right now is real time. Counsel for the plaintiff, that's right. Now, and then later on, same page, counsel for the plaintiff, real time information is meant to reflect what's happening right now. And consistently throughout the proceedings below, from the Markman hearing into the trial, the patent owner took the position that right now was fine. They dropped the express meaning construction. They then lost on that. And then, only after that, did they say, it's all a terrible misunderstanding, and in fact, we never thought that the plain meaning was right now. That simply isn't correct. It's not what happened below. And the salient issue to us in this case is you can't, as a litigant, say, I'm going to go with what the trial court says. Try my luck on that, and if I lose, then I'll go to the court of appeals and complain about it. That's a waiver or it's invited error. Under any number of doctrines, you can't do that. That's what they did here. And moving on to talk about the collect limitations, when it became clear to us that there was, in fact, a dispute, even though the trial court had said plain meaning, our view of the plain meaning of collect was different from the plaintiff's view of the plain meaning of collect, and we were concerned we were going to have a ship's passing in the night problem. We filed a motion shortly before the trial under 02micro saying plain meaning is all well and good, but we think there's actually a dispute here. The plaintiff opposed that, saying, court, you shouldn't decide any of this, that it's too late. And this is not a dispute over claim construction. It's a dispute over claim application. It's a question for the jury. And the court agreed with them on that, denied the motion, expressly said, everyone understands what collect means. I'm not going to do a claim construction resolving this issue of gather up versus receive. And we went into trial with that. And then they lost. And after they lost, they turned around and said it was all a terrible misunderstanding and we had no idea that was going to happen, and now, Court of Appeals, we need you to change it. That is a rewriting of history and it is completely inappropriate, we submit, for a litigant to embrace what the district court did, try its luck, lose, and then come here and say there's something wrong with what the district court did. Since you had moved on, at least temporarily, to the collect issue, could you address the argument that's made by your opposing counsel that the specification supports reading collect and receive synonymously? Absolutely, Your Honor, I'd be happy to. The specification consistently differentiates between those two. The positions of the two parties on this are quite opposed. Our view is that when the specification uses the term collect, it is invariably referring to this idea of gathering from a variety of disparate sources. And that's what's depicted in Figure 1. It also, when what has been collected is then passed on, packaged up into a single thing and passed on, it refers to that as providing or receiving, depending on which perspective it's taking. But it doesn't refer to that as collecting. So, for example, if we look at this argument about the feeding program, 114, the feeding program in the picture that is Figure 1 collects the information, and when that collected information is passed on to the travel data processor, that is referred to as providing or receiving, not collecting. And, Your Honor, we could go through each instance of this, but in our view, if each time the patent specification is talking about, uses the word collect, it means to gather from a variety of original sources. And it uses receive or provide to talk about when an input downstream is made. Some piece of information is moved around. And it uses the term consistently in those ways. And we think, you know, I mean, it cannot be correct that the term collect is used in the claims in a different way than it's used in the specification. And on a related point, the meaning, as you discern it, of the term, this is the data aggregation server configured to manage a plurality of data sets. Plurality of data sets. What do you think the specification tells us that that means? It means a set of different inputs, which could be real-time traffic data, for example, coming from sensors. Could be collections of historical traffic data. Could be huge amounts of historical traffic data that this data aggregation server is then going to process and make conclusions about. But what it means is different pieces of, I hesitate to use the word raw because that's in dispute, but different pieces of original information coming from somewhere else. Pulling those together and aggregating them. Well, can the somewhere else include the memory banks of the Garmin system itself with respect to historical data, for example? I think, I mean, theoretically, on a theoretical basis it could, but there was no evidence to that effect. In other words, the argument that is made here that it draws on Garmin's historical information, there's no evidence to support that in the record. And the argument that was made below, and I think is being made here, is about the fact that Garmin has a server, not a data aggregation server. And one of the notes I took just now was that the term that is being offered, that the opponents wish to talk about, they characterize as server. Not, which we would say the proper term is data aggregation server, and that's no accident. That's because they know that there's no evidence that the Garmin server does any data aggregation. And so, you know, it may well be that. I mean, we don't dispute that Garmin has a server, they probably have a lot of servers, but they don't have servers that do data aggregation, and there's nothing to suggest that in the record. And you say there's no evidence that their server aggregates, I'll use the term just for placeholder, the incoming Navtech information plus any historical information that may be on call. Garmin purchases historical information from Navtech, and that was the evidence at trial. And so four times a year, Navtech does a kind of data dump and says here's a new package of historical information that we have collected from a variety of sources. And that information replaces whatever was the prior batch, and that's what's used. And so on the Garmin devices, the historical information, just like the information coming from sources that may or may not be real-time, are purchased from Navtech. So Garmin itself is simply buying product in from Navtech. And that was the evidence at trial. The historical material is a data set. It's a data set. Right. And there's another data set, I think the argument would be, coming in on either a real-time or slightly delayed schedule, coming from Navtech as things progress. And the server, does the evidence show that the server aggregates those two data sets? No, because let's be clear, you're under the server. Garmin is not these devices that are out sitting in my car or anyone else's car. I understand that. Right. The information that's coming in real-time, if it be real-time information, information that's alleged to be real-time, it's being broadcast, not through the radio waves, to each individual device. It's not ever coming through a server. Right. So when we're talking about servers, we're talking about some computer sitting back at Garmin's offices that's receiving information from Navtech. The historical information may come in in a package to that server. That server is not getting these radio transmissions. Those are going to individual devices. Oh, I see. And so in our view, there is no data aggregation server. There's nothing in the Garmin architecture that fits that description, and that was the evidence of trial. And that's why they don't want to talk about data aggregation server. So I think I've probably run way past my time. I'm afraid I wasn't paying attention. But if the court has further questions, I certainly would be happy to entertain them or to respond to them. I should say entertain them. Thank you, Mr. Conbridge. Thank you. Mr. Bonella, you have two minutes. Thank you for the extra time, Your Honor. I'd like to make three quick points. The server, all the talk about with the server, whether they have the server, there's no evidence in the record. That's a bonus point. Our expert testified they have a data aggregation server. Their expert didn't address the issue. There's no citation in their brief. There's no citation by the court, and it's shameful. They never disputed a trial. The second point I'd like to make is the idea of this negative limitation not receiving. There's no disclaimer here, and he's just wrong with respect to his description of the patent, the Traveler Data Processor. He said the feeding program collects, the processor receives. It's just wrong. Column 2, line 52, the Traveler Data Processor collects. What patent are you in? The 649 patent, sir. 649, okay. Column 2, line 52, the Traveler Data Processor, which is the processor we're talking about, collects traffic speed data. Column 4, line 62, the Traveler Data Processor collects traffic data. Column 8, line 47, it says, we're talking about the Traveler Data Processor, it says, for example, when receiving input from users, talking about receiving data. And if you look at his figure 1, the feeding program is up here, the Traveler Data Processor's down here. He's saying this is collection, and this is receiving. Query what the difference is. But with this processor, I just read you the language. It says it collects here. It's not limited to just collecting here. The words of the specification are collects here. And the last one I'd like to make is with respect to the alleged waiver argument. He's citing to banter at oral argument about what the court said in oral argument right now. That's not the order the court gave in its claim construction order. It said plain meaning. It's not the order of jury instructions. It said plain meaning. What we said, the court also said during the banter, was ask the question, if every minute, Your Honor, would that be real time? Court's answer, it beats me. It was asked whether every 30 minutes. It said, am I supposed to take real time traffic flow and say, well, it could be as long as 30 minutes? It was leaving it for the jury. He was asked, he later said, it's data that's coming in right now. That's JA 4902. This is all the banter at the markman. That's why you can't pick banter out. Because the traffic data does come into the device right now. That's exactly what it's doing. And the court ultimately said, this definition, why do I need to define it? Why don't I just leave it alone? That's what I'm thinking about doing. And that's what the court did. It wasn't until after trial that it said there could be no data latency. We never agreed to that. We certainly would have objected to it, but we couldn't object to it because there's no reason to object because there was no order. I'm over my time. Thank you.